13 N.Y.2d 235 (1963)
In the Matter of the Claim of Bernice Marsh, Respondent. Martin P. Catherwood, as Industrial Commissioner, Appellant.
Court of Appeals of the State of New York.
Argued October 30, 1963.
Decided December 30, 1963.
Louis J. Lefkowitz, Attorney-General (Paxton Blair, Samuel Stern and Gerard R. Gemmette of counsel), for appellant.
Henry J. Metzner for respondent.
Mahlon Z. Eubank for Commerce and Industry Association of New York, Inc., amicus curiæ.
Ira M. Millstein and Marshall C. Berger for New York State Council for Retail Merchants, amicus curiæ.
Judges DYE, FULD, BURKE and FOSTER concur with Chief Judge DESMOND; Judge SCILEPPI dissents in an opinion in which Judge VAN VOORHIS concurs.
*238 Chief Judge DESMOND.
Claimant, a "full charge book-keeper" was because of slack business conditions discharged from a job at which she had been paid $95 per week. After she had filed her claim for unemployment insurance benefits the State Employment Service got for her a job referral or offer of employment at $90 per week which she refused on the ground that the wage was inadequate. The Industrial Commissioner thereafter ruled that she was not entitled to insurance benefits since, as he thought, she had not brought herself within the exception found in section 593 (subd. 2, par. [d]) of the Labor Law which provides that such a claimant need not accept employment where: "the wages or compensation * * * are substantially less favorable to the claimant than those prevailing for similar work in the locality". The Referee and in turn the Appeal Board overruled the Commissioner. When the matter came to the courts on the Commissioner's appeal the Appellate Division affirmed. The court called attention to section 624 of the Labor Law which limits the court's power of review to questions of law only and held that there was no power in the courts to upset factual determinations of the Appeal Board and that this particular determination was not erroneous in its construction or application of the law.
Some preliminary observations are in order. First, the question as to what is the "prevailing wage" for a kind of work in a locality is essentially one of fact. Second, if claimant falls within the exception she is entitled to reject the offer and collect her insurance benefits, whether or not an administrative official *239 or agency or court thinks she should have taken the offered job. Third, since the statutory test is as to whether the job offer was at a wage "substantially less favorable to claimant" than the "prevailing" wage for such work in the area, the fact that the wage for the rejected employment was nearly as high as claimant had previously been earning is not only not determinative but is of little or no legal significance. Fourth, the Appeal Board is the highest administrative body in the unemployment insurance claim adjudication hierarchy and so its determination and its construction and application of the terms "prevailing wage" and "substantially less favorable" must be accepted by the courts "`if it has "warrant in the record" and a reasonable basis in law'"  in other words, if it has a "`rational basis'" (Matter of Mounting & Finishing Co. v. McGoldrick, 294 N.Y. 104, 108).
It would be impossible on this record for a court to hold as matter of law that the $90 weekly wage turned down by claimant was not substantially less favorable than the prevailing wage for such work in the locality. The underlying statistics were assembled by the department's bureau of research and statistics and show that the range of wages paid to about 20,000 people engaged in this work (a concededly fair sampling) was from $40 to $145 per week but that about half of them were working at wages ranging from $90 to $120 weekly. The Commissioner struck from the sample the lowest and the highest quartiles as representing extreme lows and highs and then computed at $103.63 the weighted average of the middle 50%. So far, his method and his mathematics were unexceptionable. But his task under the statute was to find what was "substantially less favorable" than the "prevailing wage" and this he did by holding in effect that the "prevailing wage cut-off" was $90 per week. In other words, he decided that any wage inside the middle 50% (including the $90 at the bottom thereof) was not "substantially less favorable" than the "prevailing wage". The Appeal Board, however, pointed out that the same survey showed that 65% of all the people engaged in this work in the area earned more than $90 (5,000 receive less than $90, 2,000 get $90 and 13,000 are paid more than $90 and up to $140) and that of the middle 50% more than two thirds were receiving wages more than 10% higher than the $90 offered to claimant. *240 Therefore, held the Appeal Board, the $90 figure was "substantially less favorable" to claimant than the "prevailing" wage and claimant was within her rights in refusing it. The Appeal Board adopted no "rule" that a wage cannot be more than 10% below the weighted average of the middle half, but held that the claimant could reject the job offer since its compensation was not within 10% of $103.63.
Surely there was a "rational basis" for the board's conclusion that the offer was substantially lower than the prevailing wage for such jobs in the locality, when so large a majority of all the workers were getting more and many of them much more.
The Commissioner, however, stands firm on his own directive issued in January, 1962 after the court's decision in Matter of Sellers (Mays, Inc.) (13 A D 2d 204). In Sellers it had been ruled that it was arbitrary and improper to take the median or middle wage in a sample as the "prevailing wage". In the directive the Commissioner notified his staff that, in cases where there is no concentration of 40% or more workers at the same wage rate, the weighted average of the middle 50% was thereafter to be used (instead of the "median" wage or wage of the middle worker) as the prevailing wage. As to "substantially less favorable" his order to his staff was that such a label was to be applied to any wage less than the lowest wage of the middle 50% or more than 20% below the prevailing rate. Applying those rules to the present case would require claimant to accept any job offered at $90 (lowest wage of middle 50%). The Commissioner argues that as matter of law any wage rate anywhere within the range of the middle 50% cannot be held to be substantially below the prevailing wage. The answer is that, while the Commissioner could take it as an approach or rule of thumb for administrative purposes that anything within the middle 50% range was not substantially below prevailing wages, he cannot be heard to assert that the Appeal Board, given by the statute appellate jurisdiction over his determinations, necessarily erred when it held in this case that a wage considerably lower than that enjoyed by two thirds of those similarly employed was substantially less favorable than prevailing wages. It is not an error of law to say that $90 is substantially less than $103.63. The board's holding had a not irrational *241 basis in the particular facts, and for the courts that is the end of the matter.
The order should be affirmed, with costs.
SCILEPPI, J. (dissenting).
Claimant had been employed as a full charge bookkeeper. She was hired to work fulltime  from 9:00 A.M. to 5:30 P.M., five days a week  at a starting salary of $90 per week. It later developed that claimant's home situation  she was married and had three small children  required her to leave her place of employment before the normal 5:30 P.M.; however, she took work home in order to compensate for her early departure. Sometime during the course of her employment the salary was increased to $95 per week. After a period of approximately 13 months at said job, claimant was discharged by her employer, whereupon she filed a claim for unemployment insurance benefits.
Claimant had been receiving benefits for about three months when the New York State Employment Service referred her to an employer who offered her a job as a full charge bookkeeper on a full time basis  from 9:00 A.M. to 5:30 P.M., five days a week  at a salary of $90 per week. Claimant refused the job stating the salary was insufficient. Thereupon the Commissioner issued an initial determination terminating the payment of benefits, pursuant to subdivision 2 of section 593 of the Unemployment Insurance Law (Labor Law, art. 18), upon the ground that "The salary offered was not substantially below the wages paid for this work in this locality"; thus claimant's refusal of this otherwise suitable employment was without good cause. Claimant requested a hearing before a Referee pursuant to section 620 of the Unemployment Insurance Law (Labor Law, art. 18). The Referee overruled the Commissioner's initial determination. The Commissioner then appealed to the Unemployment Insurance Appeal Board, who affirmed the Referee's decision. In the opinion rendered in connection therewith the board stated:
"A survey of full charge bookkeepers' wages in the Metropolitan area was made in April, 1961, by the Bureau of Research and Statistics, a unit specifically charged with the duty of compiling prevailing wage information for the use of the Division of Employment. The survey covered 19,651 such employees and indicated that 10,314 of them were paid wages ranging from $90 *242 per week to $119.99 per week. The weighted average of the middle fifty percent of the survey is $103.63. The entire survey range was from $40 per week to over $145 per week. The number of persons surveyed comprised a fair sampling of the persons employed in claimant's occupation in this area.
"The Industrial Commissioner determined that since the offered wage was not less than the lowest wages paid to the middle fifty percent nor more than twenty percent below the weighted average of the middle fifty percent range, the offered wage was not substantially less favorable to the claimant than the prevailing wage."
The board went on to state, however, that the "weighted average" of the middle 50% of full charge bookkeepers surveyed was the "prevailing wage for such occupation in that geographical area"; that since the wage offered the instant claimant was more than 10%, to wit, 13% below the prevailing wage as above defined, it was "substantially less favorable" within the meaning of section 593 (subd. 2, par. [d]) of the Unemployment Insurance Law (Labor Law, art. 18), and claimant's refusal to accept the employment offered was with "good cause".
The sole question present here turns on the construction of subdivision 2 of section 593, which in pertinent part provides: "No refusal to accept employment shall be deemed without good cause nor shall it disqualify any claimant otherwise eligible to receive benefits if * * * (d) the wages or compensation or hours or conditions offered are substantially less favorable to the claimant than those prevailing for similar work in the locality, or are such as tend to depress wages or working conditions." It should be noted however that this court's function regarding the issue of statutory construction, under the circumstances here, is limited. In Matter of Mounting & Finishing Co. v. McGoldrick (294 N.Y. 104) it was stated (p. 108): "Of course, statutory construction is the function of the courts `but where the question is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited' (Board v. Hearst Publications, 322 U. S. 111, 131). The administrative determination is to be accepted by *243 the courts `if it has "warrant in the record" and a reasonable basis in law' (same citation.) `The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body' (Rochester Tel. Corp. v. U. S., 307 U. S. 125, 146)."
In this case the record indicates that claimant was employed as a full charge bookkeeper on a full time basis at a salary of $95 per week and refused an offer of a similar type job because the salary was $90 per week. The discussion first must center on whether there was a rational basis for the conclusion reached by the board to the effect that the salary of $90 per week offered claimant was "substantially less favorable" than those "prevailing for similar work in the locality" within the meaning of section 593 (subd. 2, par. [d]) of the Unemployment Insurance Law (Labor Law, art. 18).
In Matter of Sellers (Mays, Inc.) (13 A D 2d 204), involving a problem analogous to the one at bar, the Appellate Division stated (pp. 206-207): "Claimant's wage was within the range of wages found in the survey (which varied widely), but was somewhat less than the `median' wage. The difficulty is that `median' wage, the wage of the middle worker, is not the same thing as `prevailing' wage. * * * The survey relied upon necessarily included widely varied types of establishments and employers and included employees of widely varied abilities, experience and job performance. To arbitrarily take the middle worker's wages as the wages `prevailing' for the particular type of work performed by claimant finds no sanction in the statute [Unemployment Insurance Law (Labor Law, art. 18), § 593, subd. 2, par. (d)] in judicial precedent, or in common sense." (Brackets and emphasis supplied.)
So, in this case, also involving a widely varying range of wages, to take the weighted average of the wages of the middle 50% of the workers surveyed as prevailing, and to establish as substantially less favorable any wage offer more than 10% below said average, seems to be no less arbitrary and unreasonable.
The construction of section 593 (subd. 2, par [d]) of the Unemployment Insurance Law (Labor Law, art. 18) adopted by the board and approved by the majority here would conceivably *244 permit a full charge bookkeeper who had been making $90 per week to refuse an offer of employment at a salary of $92 or even $93 per week. Many more examples could well be put forward to illustrate the unreasonableness of the rigid and mechanical formula invoked by the board. Needless to say, this approach to the problem would serve in the long run to defeat the very purpose of the statute, designed, as it were, not to regulate wages (Matter of Sellers [Mays, Inc.], supra) but merely to ameliorate economic insecurity due to involuntary unemployment by tiding over the financial strain incident thereto (Unemployment Insurance Law [Labor Law, art. 18], § 501). It appears that the holding in Matter of Wetzig (Corsi) (304 N.Y. 916) tends to support my conclusion here. There, the claimant, an experienced plier worker in the jewelry trade, had been earning $1.10 per hour. Some five months after having become unemployed she refused an offer of a job as a plier worker at a wage of 90 cents per hour. The prevailing wage was based upon the union scale, which varied from 90 cents to $1.15 per hour. It was held that claimant's refusal was without good cause.
In large measure, the Commissioner's formula for determining the prevailing wage and what constitutes substantially less favorable is subject to the same criticism as the board's formula; however, insofar as the Commissioner's formula uses the range of wages of the middle 50%, which is from $90 to $119.99 per week, it more nearly approaches the scheme approved of in Wetzig (supra).
Nonetheless I feel that both formulae are too mechanical, and to varying degrees unreasonable, in cases where, as here, the wage range is so wide as to render almost meaningless any attempt to establish what is prevailing. The key to what constitutes substantially less favorable may very well lie with claimant's last salary, or the solution may be a more detailed survey which would establish separate groups for workers based not only on the nature of the work performed but also experience, tenure and quantum of responsibility, among other things. In any event, I do not believe that the offered salary of $90 per week, having been merely $5 less per week than claimant had been earning, could under any circumstances be deemed substantially less favorable.
*245 I would reverse the order appealed from and reinstate the Commissioner's initial determination.
Order affirmed.